<u>NOT FOR PUBLICATION</u>

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| v. | : | Crim. No. 05-437 (RBK) |
| CARLOS ROSARIO, | : | |
| Defendant. | : | |

**O P I N I O N**

**Kugler**, United States District Judge:

This matter comes before the Court upon a motion by Defendant Carlos Rosario ("Rosario") to suppress evidence seized by New Jersey State Troopers during a traffic stop of Rosario on April 8, 2005. For the reasons set forth below, the Court will deny Rosario's motion.

**I.    BACKGROUND**

In the spring of 2005, the Drug Enforcement Administration's ("DEA") Mobile Enforcement Team targeted Camden, New Jersey, in pursuit of mid-level narcotic dealers. Information obtained by the DEA led to the investigation of Rosario. Based on the initial investigation, the DEA learned that there was an active warrant from the Camden Municipal Court issued for Rosario in 1996. The name listed on the warrant was Carlos Santana

1

("Santana"), an alias of Rosario with which the DEA was familiar based on its investigatory efforts.[1]

A New Jersey State Police detective was working with the DEA task force regarding its investigation of Rosario. The detective was informed about the active warrant for Santana and the DEA's discovery that Santana was an alias used by Rosario. As further support for the connection between Rosario and Santana, the DEA and the detective verified that Rosario's unique offender identifying number assigned by the State Police, the "SBI Number," matched the SBI number listed on the active warrant.[2]

The detective arranged for Troopers J.G. Reitz and E. Crain to perform a motor vehicle stop and arrest Rosario. Due to consistent DEA surveillance, the detective was aware of Rosario's location on the evening of the incident at issue. The detective explained to the troopers that Rosario was the subject of an ongoing criminal investigation. Trooper Reitz was informed that a criminal record check was performed on Rosario and it was determined that an active arrest warrant had been issued against Santana, who according to the investigation, was Rosario.

According to the Government, the DEA intended for the troopers to arrest Rosario and impound his vehicle so that the DEA could place a battery operated tracking device on the vehicle as an investigative tool. In order to protect the confidentiality of the ongoing investigation, Trooper Reitz was asked not to disclose the existence of the arrest warrant if the troopers had other grounds to make an arrest.

---

[1] Among other evidence, Rosario's criminal history record revealed his use of the alias Carlos Santana.

[2] A particular SBI number identifies a single individual, because that number must correspond to the unique fingerprints of that individual.

On April 8, 2005 at approximately 3:30 a.m. in heavy rain, Troopers Reitz and Crain were parked facing eastbound traffic on Admiral Wilson Boulevard in Camden, New Jersey when they observed a black BMW 745i driven by Rosario exiting the Benjamin Franklin Bridge at an excessive speed. According to the Government, the troopers intended to initiate a traffic stop based solely on the information obtained from the detective. Rosario's excessive speed gave them further grounds to perform the stop.[3]

Before Trooper Reitz and his partner encountered Rosario, they believed that he posed a substantial risk to their safety, primarily due to the DEA's warning that Rosario could be carrying a gun. After initiating the motor vehicle stop, Trooper Reitz approached the driver's side of Rosario's vehicle. Trooper Reitz smelled alcohol on Rosario's person and required him to exit the vehicle and perform sobriety tests. Rosario passed these tests without complication. The troopers did not issue a traffic ticket, but instead issued a warning ticket that Rosario received in the mail several days after the traffic stop. No official citation was provided to Rosario during the initial encounter with the troopers.

Following the sobriety tests, Trooper Reitz allowed Rosario to return to his vehicle. Finding no other grounds to further detain Rosario and complete their objective, the troopers decided that it was necessary to execute the 1996 arrest warrant. Prior to executing the warrant, Trooper Reitz confirmed its existence via radio call to the State Police barracks in Bellmawr,

---

[3] At the suppression hearing, Rosario contested the trooper's assertion that he was speeding. This Court, however, finds the trooper's assertion that Rosario was speeding to be credible.

New Jersey.[4]  In the police report, Trooper Reitz claimed to have just learned about the warrant after completing a computer search of the Rosario name in the police vehicle.  The Government contends that this was done to preserve the confidentiality of the ongoing investigation.

The troopers returned to the vehicle, informed Rosario of the active warrant, and placed him under arrest.  After arresting Rosario, the troopers performed a search incident to the arrest and found a loaded Glock 9-millimeter handgun in his waistband.  A subsequent check of the weapon revealed that it was stolen in July of 2002.  On June 1, 2005, a federal grand jury sitting in Camden, New Jersey, returned a one-count indictment, charging Rosario with being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1), 922(g)(2).

Rosario has moved for this Court to suppress the evidence of the seizure of the handgun.  The Court conducted an evidentiary hearing on November 29, 2006.  During the hearing, Trooper Reitz testified regarding the April 8, 2005 arrest of Rosario.  Trooper Reitz stated that he wrote the police report in a manner that would not disclose his cooperation with the detective and the DEA or his previous knowledge of the active warrant.  Specifically, the report indicated that the troopers learned of the warrant during the stop.  Trooper Reitz testified that his report was written in a manner consistent with his training in situations involving direct stops and ongoing investigations with other law enforcement agencies.

Trooper Reitz was questioned regarding the reliability of the detective's assertion that

---

[4] As previously noted, the warrant executed during the motor vehicle stop listed Rosario as "Carlos Santana," an alias with which the troopers were familiar based on the information provided by the DEA.

Rosario and Santana were the same person for purposes of the 1996 warrant.[5] Following communication with the DEA, the detective informed Trooper Reitz that Rosario was under constant surveillance, that the DEA performed a criminal history check on Rosario, and that they discovered an active warrant. Trooper Reitz testified that he believed that the DEA and the detective were acting in good faith and had accurate information. Following the arrest, Trooper Reitz confirmed that the warrant for Santana was in fact a warrant for Rosario. Specifically, Trooper Reitz matched the SBI number on the 1996 Santana warrant to the State Police's SBI number for Rosario.

  Rosario notes that the warrant for Santana was issued in Camden Municipal Court in 1996 regarding a theft of services case, and that Rosario had at least two subsequent appearances on unrelated matters in the name "Rosario" in the same court that issued the warrant and in the Camden County Superior Court. According to Rosario, the Rosario and Santana names were not known to be connected. Thus, Rosario calls into doubt the officer's reasoning for initiating the motor vehicle stop, alleging that the troopers acted in bad faith in performing the stop for excessive speeding and that the evidentiary seizure that subsequently occurred was unconstitutional. In further support of this point, Rosario argues that the troopers' failure to issue an official citation during the motor vehicle stop is evidence that the speeding offense was a facade the troopers fabricated after Rosario was detained and found to be in possession of a

---

[5] Specifically, the defense questioned Trooper Reitz about the identifiers in the Santana warrant (name, address, and date of birth) that did not match the information possessed by Rosario at the time of the motor vehicle stop. Despite these inconsistencies, Trooper Reitz testified that he relied on the good faith investigative efforts of the DEA in determining that Santana and Rosario were the same person. This Court does not find these discrepancies to be problematic in determining that the troopers and the DEA acted with probable cause. See Hill v. California, 401 U.S. 797, 803 (1971) ("[A]liases and false identifications are not uncommon.").

firearm.

Accordingly, Rosario claims that his arrest was unconstitutional because Trooper Reitz relied on statements made by a State Police detective that were not grounded in probable cause. Rosario further argues that he was not speeding, and therefore there was no reasonable suspicion to justify the motor vehicle stop. Rosario asks the Court to suppress the gun that was seized during the April 8, 2005 arrest.

**II.     DISCUSSION**

"The Fourth Amendment protects the right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures." United States v. Hensley, 469 U.S. 221, 226 (1985). The exclusionary rule applies to the fruits of a seizure of a person by illegal arrest, or illegal stop. Such illegally seized evidence is often referred to as the "fruits of the poisonous tree" and is inadmissable in a criminal trial. Wong Sun v. United States, 371 U.S. 471, 484-85 (1963). As a general rule, the burden of proof is on the defendant who seeks to suppress evidence. United States v. Acosta, 965 F.2d 1248, 1256 n.9 (3d Cir. 1992). However, once the defendant has established a basis for his motion, the burden shifts to the government to show that the seizure was reasonable. Id.

It is well established that "a search incident to a lawful arrest is a traditional exception to the warrant requirement of the Fourth Amendment." United States v. Robinson, 414 U.S. 218, 224 (1973). Thus, after making a valid custodial arrest, officers may conduct a warrantless search of the defendant without probable cause or reasonable suspicion to believe that the defendant possessed a weapon or evidence. New York v. Belton, 453 U.S. 454, 461 (1981). The

existence of an arrest warrant by officers conducting an arrest or search greatly reduces the perception of unlawful or intrusive police conduct.  Illinois v. Gates, 462 U.S. 213, 236 (1983).

It is generally recognized that "police officers called upon to aid other officers in executing arrest warrants are entitled to assume that the officers requesting aid" had probable cause to effect an arrest.  Whiteley v. Warden, 401 U.S. 560, 568 (1971).  However, "an otherwise illegal arrest cannot be insulated from challenge by the decision of the instigating officer to rely on fellow officers to make the arrest."  Id.  Therefore, "the arresting officer need not possess an encyclopedic knowledge of the facts supporting probable cause, but can instead rely on an instruction to arrest delivered by other officers possessing probable cause."  United States v. Burton, 288 F.3d 91, 99 (3d Cir. 2002).  See also Rogers v. Powell, 120 F.3d 446, 453 (3d Cir. 1997) ("The legality of a seizure based solely on statements issued by fellow officers depends on whether the officers who issued the statements possessed the requisite basis to seize the suspect.  Moreover, an officer can lawfully act solely on the basis of statements issued by fellow officers if the officers issuing the statements possessed the facts and circumstances necessary to support a finding of the requisite basis.") (citing Hensley, 469 U.S. at 231-32).[6]

In order to determine whether the evidence in this case was properly seized following Rosario's arrest on April 8, 2005, the Court must determine whether the arrest itself was proper, as the Government asserts that the seizure occurred during a search pursuant to a lawful arrest.  Based on the above-mentioned standard, the arrest was lawful if the DEA agents had probable

---

[6] The Government sets forth its argument against suppression under the doctrine of "reasonable reliance."  This Court, however, believes that such an analysis is unnecessary, as the holdings in Burton, Rogers and Hensley provide an adequate basis for finding that the troopers had probable cause to arrest and detain Rosario.

cause to arrest Rosario and the arresting troopers acted on the basis of the request made of them by the detective that was working with the DEA.

Rosario does not contest the validity of the arrest warrant that was executed. Rather, Rosario argues that the warrant only authorized the arrest of Santana. Rosario contends that the arresting officers improperly connected him with the Santana alias by relying on statements made by a State Police detective that were not grounded in probable cause.[7] Rosario argues that the arresting officers blindly accepted the request to execute the warrant and points to the differences between the warrant and Rosario's actual information. Specifically, the name, address and birth date on the warrant did not match those of Rosario.[8] Further, although the SBI numbers did match, Rosario noted that the officers did not possess this knowledge until after the arrest and seizure.

Rosario points to Whiteley as a basis for suppression. Rosario argues that based on Whiteley, a mistakenly issued or executed warrant cannot provide probable cause for an arrest. However, Rosario has not alleged that the Santana warrant was unsupported by probable cause, but that the officers' acceptance of the alleged connection between Rosario and Santana did not

---

[7] Rosario further challenged the connection between himself and the Santana alias by noting previous unrelated arrests where the Santana warrant was not executed. However, Rosario has not presented any evidence to suggest that the warrant was never executed because the two names were not known to be connected. Nonetheless, at the time of the arrest, Trooper Reitz did not have knowledge that Rosario previously appeared in court and was not arrested on the Santana warrant.

[8] The 1996 warrant did not contain any physical descriptions that would have contradicted the officers' personal observations on the night of the arrest. The differences relied on by Rosario were limited to his name, address, and birth date. As is mentioned above, such discrepancies are not sufficient to find probable cause to be lacking.

provide the necessary probable cause to arrest Rosario.

This Court finds Rosario's arguments to be unpersuasive.  This Court finds that the Government has successfully established that Rosario and Santana are the same person.  The DEA examined Rosario's official criminal history record and revealed that his only recorded alias was "Carlos Santana."  Further, the DEA coordinated with a State Police detective and matched the SBI numbers listed on the 1996 Santana warrant with the State Police's SBI number for Carlos Rosario.

Based on the record, the DEA possessed the requisite probable cause to authorize the execution of the 1996 warrant.  The detective working with the DEA communicated with the troopers and informed them that criminal history checks linked the Rosario and Santana names for purposes of the warrant.  Further, the officers contacted the local State Police barracks from the police vehicle and confirmed the existence of the warrant before executing it.  Finally, after making the arrest and seizing the handgun, the troopers confirmed that Rosario was in fact the person identified on the warrant by matching Rosario's State Police SBI number and the SBI number listed on the warrant.  Based on these facts, the arrest of Rosario and the subsequent search and seizure of the handgun were not unconstitutional.

Alternatively, as previously stated, this Court credits Trooper Reitz's testimony that he and his partner witnessed Rosario speeding prior to initiating the traffic stop.  Accordingly, this observation would suffice in giving the troopers an alternate basis for conducting the motor vehicle stop in question.  Therefore, even if the information provided to the troopers by the detective was not sufficient to detain Rosario, the troopers had the requisite reasonable suspicion

to effect the stop, after which they were informed over the radio of the existence of the warrant in question. As is stated above, while the warrant is issued under the name Santana, probable cause exists to link it to Rosario.

### III.   CONCLUSION

Based on the foregoing reasoning, this Court will deny Rosario's motion to suppress. The accompanying Order shall issue today.


Dated: March 26. 2007                                           s/ Robert B. Kugler
                                                                ROBERT B. KUGLER
                                                                United States District Judge